[Cite as *State v. Gunter*, 2011-Ohio-3388.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95775

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JERRY GUNTER

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531348

**BEFORE:**    Sweeney, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**    July 7, 2011

**ATTORNEY FOR APPELLANT**

Richard A. Neff, Esq.
614 W. Superior Avenue
Suite 1310
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Mark J. Mahoney, Esq.
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶ 1}   Defendant-appellant Jerry Gunter ("defendant") appeals his convictions for rape, kidnapping, and gross sexual imposition.   After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2}   On December 9, 2009, defendant was charged with one count each of rape, kidnapping, and gross sexual imposition.   The alleged victim was his 11-year-old cousin J.G.   The case proceeded to a bench trial and on August 26, 2010, the court found defendant guilty

as indicted. The court sentenced defendant to ten-years-to-life in prison for the rape and kidnapping, and one year in prison for the gross sexual imposition, to run concurrently.

{¶ 3} Defendant appeals and raises one assignment of error for our review.

{¶ 4} "I. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against both the sufficiency of the evidence and the manifest weight of the evidence."

{¶ 5} When reviewing sufficiency of the evidence, an appellate court must determine, "after viewing the evidence in a light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 6} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

{¶ 7} "The appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 8} In the instant case, defendant was convicted of the following offenses:

–4–

{¶ 9}   Rape in violation of R.C. 2907.02(A)(1)(b), which states that "No person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶ 10} Kidnapping in violation of R.C. 2905.01(A)(4), which states that "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * *   [t]o engage in sexual activity * * * with the victim against the victim's will * * *."

{¶ 11} Gross sexual imposition in violation of R.C. 2907.05(A)(4), which states that "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶ 12} The following evidence was presented at trial:

{¶ 13} J.G. testified that she slept over her aunt's house on Saturday October 31, Sunday November 1, and Monday November 2, 2009.  Defendant's bedroom was in the basement of this house.  Defendant and J.G.'s uncle Nate also has a bedroom in the basement of this house.  J.G., defendant, and another cousin named Keith were playing video games and watching television in defendant's bedroom on Sunday night.  Nate was in his own room that night.  J.G. fell asleep in a chair in defendant's bedroom.  Defendant and Keith fell asleep in defendant's twin bed.

{¶ 14} J.G. testified that she woke up in the middle of the night and was scared to go upstairs. J.G. asked defendant to scoot over. Keith moved toward the wall, defendant moved toward the middle, and J.G. got into the bed with her back to defendant. After about two minutes, defendant pulled J.G.'s pajama pants and underwear down and put his penis inside her "private." J.G. tried to push defendant off her, but he pulled her back. J.G. felt something inside of her, defendant began to move back and forth, then J.G. felt pain and something wet. Defendant stopped, and J.G. pulled her pants up and went upstairs. She lay down on the couch and began to cry. She thought it was sometime between 6:00 and 7:00 a.m.

{¶ 15} J.G. did not tell anyone what defendant allegedly did to her because J.G. was scared. J.G. slept in one of the upstairs bedrooms on Monday night. She woke up in the middle of the night, and defendant was lying in the bed with her. He put his hand on her "stomach close to [her] private part," then he left.

{¶ 16} J.G.'s mom picked J.G. up the next morning. When they got home, J.G. told her mom that something happened. Her mom asked what happened, and J.G. said it started with the letter "R." Her mom asked again, and J.G. said it started with the letters "R-A." When J.G.'s mom "put it together," J.G. filled in the details. J.G.'s mom told a few family members what happened, then her brother Bernard took J.G. to the hospital.

{¶ 17} J.G.'s mother testified that she picked J.G. up from her aunt's house on Tuesday November 3, 2009. As J.G. and her mom were walking home from the bus stop, J.G. told her mom that defendant sexually assaulted her over the weekend. J.G.'s mother called her brother Bernard, who took them to the hospital to have J.G. examined. Additionally, Bernard arranged for the police to come to the hospital and take an incident report.

{¶ 18} Renee Hotz, the forensic nurse who examined J.G. at University Hospitals, testified that J.G. was wearing the same underwear at the time of the exam as she had been wearing when defendant raped her. Hotz collected this underwear for testing along with swabs taken from J.G.'s genitalia. During the exam, Hotz noted a laceration on J.G.'s genital area. Hotz testified that it may have been caused by a sexual assault, and, in her opinion, there was "penetration in the case of [J.G.]."

{¶ 19} Hotz read the following statement, which is what J.G. told Hotz happened:

{¶ 20} "I was laying on a chair on the basement. I woke up and was falling back to sleep. We had watched a vampire movie. I was scared. I asked [defendant] to move over. I thought he was laying on the edge. He kept pulling me back. He was putting his hand on my stomach, then into my pants. He took his hand out and pulled my pants down. He put his thing into me. I kept pushing him away. Then he pulled me back again. I scratched him on his arm. Then he kept doing it again. Then he stopped after a while * * *."

{¶ 21} On cross-examination, Hotz testified that the laceration found on J.G. was not conclusive of sexual assault and could have been caused by other factors. Additionally, J.G.'s hymen was intact, although this was not necessarily indicative that J.G. had never been penetrated.

{¶ 22} According to the Ohio Bureau of Criminal Identification and Investigation ("BCI") reports, semen and blood were found on J.G.'s underwear and genital swabs. A scientist from BCI testified that two DNA profiles were present on these items, one consistent with J.G. and the other consistent with defendant. The "frequency of occurrence from the DNA profile from the sperm fraction" found on the underwear and one of the genital swabs is between "one in 42 quintillion 140 quadrillion unrelated individuals [and] one in 237 sextillion 137 quintillion unrelated individuals." In other words, other than defendant, "that rules out anybody else on the planet."

{¶ 23} In defendant's case-in-chief, he did not dispute the scientific evidence placing his DNA on J.G.'s genitals and underwear. Rather, he disputed how it got there. Defendant testified as follows:

{¶ 24} On October 30, 2009, defendant's cousin Bernard and two other males kidnapped defendant at gunpoint. Bernard told defendant that he loved his family, but he needed defendant to do something for him. Bernard also said, "I will kill you if I have to." Bernard did not tell defendant what "something" meant.

{¶ 25} On the night of November 1, 2009, after playing video games and watching television, defendant and his cousin Keith fell asleep in defendant's bed and J.G. fell asleep in the chair in defendant's room. J.G. did not come into defendant's bed at any time, and defendant had no sexual contact with J.G. at any time. Defendant did not wake up until the next morning around 6:00 when his mother told him to turn the television off.

{¶ 26} On November 2, 2009, Bernard came to defendant's house and told defendant, "I need you to put your sperm on [J.G.'s] drawers. * * * I need you to do this because if I go down I'm going down for a long time; I need you to do this for me. * * * [Y]ou only going to do about three weeks, then they gonna let you go."

{¶ 27} As a result of the conversation with Bernard, defendant masturbated into a tissue, and approached J.G., who was upstairs watching television. Defendant asked J.G. if she knew what was going on. J.G. nodded her head up and down, indicating that she understood what defendant was asking her. Defendant handed J.G. the tissue and left the room. Defendant does not know what J.G. did with the tissue. Defendant felt he had to do this because he was afraid of Bernard.

{¶ 28} Defendant learned later that day that J.G. accused him of raping her. Defendant was "shocked, but * * * thought it was all part of what was supposed to happen." Defendant voluntarily spoke with social workers and denied the allegations against him. He later provided a DNA sample. Defendant did not say anything about the incident with

Bernard, because defendant was "still going along with" what Bernard told defendant to do, and defendant was trying to protect his family. Eventually, defendant told his attorney about Bernard's threats.

{¶ 29} Nate testified that his bedroom is two to three feet away from defendant's bedroom. On Sunday night, November 1, 2009, Nate was in his room, while defendant, Keith, and J.G. were playing video games in defendant's room. On the way to the bathroom around 5:30 or 6:00 a.m., Nate looked into defendant's bedroom because the television was on. Nate saw defendant and Keith asleep in defendant's bed. J.G. was in the chair under a blanket. Shortly after this, defendant's mom came downstairs and told defendant to turn the television off.

{¶ 30} Keith testified that he, defendant, and J.G. were watching television and playing video games in defendant's bedroom on Sunday night November 1, 2009. Nate was in the other bedroom in the basement. Keith and defendant fell asleep in the bed, with defendant against the wall and Keith closer to the edge of the bed. J.G. fell asleep in the chair. Keith testified that he did not hear or feel anything unusual while he slept that night. Keith recalled defendant's mother yelling at defendant to turn the television off.

{¶ 31} In looking at defendant's arguments regarding the sufficiency of the evidence, we first note that it is undisputed that J.G. was under the age of 13, which is an element of defendant's rape and gross sexual imposition convictions. J.G.'s testimony, coupled with the

DNA evidence, is sufficient to show that defendant engaged in sexual conduct with J.G., which supports the rape conviction. J.G. testified that defendant put his penis inside her "private" and moved back and forth. Pursuant to R.C. 2907.01(A), sexual conduct includes vaginal intercourse and "[p]enetration, however slight, is sufficient to complete vaginal * * * intercourse."

{¶ 32} We additionally find that there was sufficient evidence to show that defendant restrained J.G.'s liberty in relation to the kidnapping conviction. In *State v. Logan* (1979), 60 Ohio St.2d 126, 130, 397 N.E.2d 1345, the Ohio Supreme Court held the following: "It is clear from the plain language of the statute that no movement is required to constitute the offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient. Thus, implicit within every forcible rape is a kidnapping." Furthermore, the rape of a child by an adult family member is "inevitably forcible." *State v. Williams*, Cuyahoga App. No. 92714, 2010-Ohio-70, ¶33.

{¶ 33} The essential element of gross sexual imposition pertinent to the case at hand is that defendant had "sexual contact" with J.G. Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." J.G. testified that on Monday night she awoke to find defendant in bed with her, touching her stomach near her pubic region. Given J.G.'s

allegation that this happened the night after defendant raped her, we find the testimony sufficient to show that defendant's touch was sexual in nature. See, e.g., *State v. Daniels*, Cuyahoga App. No. 92563, 2010-Ohio-899, ¶58 (stating that "Ohio courts have consistently held that a rape conviction may rest solely on the victim's testimony, if believed.")

{¶ 34} Turning to the manifest weight of the evidence, the court found that this case turned on "two competing and conflicting theories" about how defendant's DNA got on J.G.'s underwear and genitalia. The court stated that the state's case was "very credible," and the defendant's case did not present reasonable doubt. The court did not believe defendant's testimony about being kidnapped and threatened by Bernard. Specifically, the court noted that there was no explanation or rationale behind why Bernard wanted defendant to do what defendant allegedly did. The court also found it unbelievable that defendant would not initially report the threats to anyone and that J.G. was somehow involved or at least aware of this scheme.

{¶ 35} The fact-finder is free to believe all, part, or none of each witness's testimony. See *State v. Martin*, Cuyahoga App. No. 90722, 2008-Ohio-5263. As the Ohio Supreme Court has noted, "where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742.

{¶ 36} Accordingly, we find that there was sufficient evidence to convict defendant of rape, kidnapping, and gross sexual imposition, and these convictions were not against the manifest weight of the evidence. Defendant's sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

JAMES J. SWEENEY, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
SEAN C. GALLAGHER, J., CONCUR