[Cite as *State v. Rodriguez*, 2021-Ohio-2580.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                    No. 109320

    v.                           :

JONATHAN RODRIGUEZ,                     :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 29, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-643801-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly N. Mason, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Jonathan Rodriguez appeals his convictions for rape, attempted rape and two counts of gross sexual imposition as well as the sexually violent predator specifications attached to the rape and attempted rape counts. We affirm.

**Background**

{¶ 2} Rodriguez's four counts of conviction pertain to one victim, his stepdaughter, S.V. Rodriguez was found not guilty of 24 other counts of rape, gross sexual imposition and kidnapping pertaining to S.V., two other stepdaughters and his biological daughter.

{¶ 3} Rodriguez became involved with the children's mother, B.S., in Puerto Rico in 2011 before they moved to a house on Hague Avenue in Cleveland, Ohio in 2012. B.S. has six children, including three with Rodriguez.

{¶ 4} S.V. testified that Rodriguez began sexually abusing her when she was 12 years old in Puerto Rico and that the abuse continued after they moved to Cleveland.

{¶ 5} S.V. testified that Rodriguez entered her bedroom in the middle of the night when she was sleeping. Rodriguez pulled down both her pants and underwear and proceeded to touch and digitally penetrate her vagina with one hand, while touching his penis with his other. Rodriguez did these acts multiple times over the course of several years. Rodriguez told her he was in love with her and threatened that he would harm S.V., her sisters and their mother if S.V. told anybody about what he did to her. S.V. did not disclose this abuse to police until years later.

**Assignments of Error**

{¶ 6} Rodriguez asserts the following five assignments of error:

1. The trial court erred in denying appellant's motion for acquittal pursuant to Crim.R. 29 when the state failed to submit sufficient evidence for the crimes charged, denying the appellant due process.

2. Appellant's convictions are against the manifest weight of the evidence.

3. Appellant was denied due process and a fair and impartial trial as guaranteed by the 5th, 6th, and 14th Amendments of the U.S. Constitution and Article I § 16 of the Ohio Constitution based on prosecutorial misconduct.

4. The trial court deprived the appellant the right to due process and right to a fair trial when it prevented the defense the ability confront [sic] his accusers.

5. The trial court erred in allowing several instances of improper character evidence and other act evidence depriving the appellant the right to due process and a fair trial.

**Sufficiency of the Evidence**

{¶ 7} In his first assignment of error, Rodriguez claims that the state presented insufficient evidence to sustain his convictions for attempted rape and the sexually violent predator specification.

{¶ 8} A challenge to the sufficiency of the evidence supporting a conviction requires a determination as to whether the state met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the evidence is to be believed but whether, if believed, the evidence

admitted at trial would support a conviction beyond a reasonable doubt. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

**Attempted Rape**

{¶ 9} Rodriguez was convicted of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2). R.C. 2907.02(A)(2) provides: "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 10} R.C. 2923.02(A) provides: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶ 11} Sexual conduct is defined in R.C. 2907.01(A) as:

[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 12} The Ohio Supreme Court has held that a criminal attempt is an act or omission constituting a substantial step toward committing a crime. *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), *overruled in part on other grounds*, *State v. Downs*, 51 Ohio St.2d 47, 53, 364 N.E.2d 1140 (1977). The act "must be strongly corroborative of the actor's criminal purpose" in order to

constitute a substantial step toward the act, but need not be the last proximate act prior to the commission of the offense. *Id.*, at paragraph one of the syllabus. This standard directs attention to overt acts of the defendant that "convincingly demonstrate" the defendant's firm purpose to commit the offense. *Id.* at 132. (Citations omitted.) "There must be evidence indicating purpose to commit rape instead of some other sex offense, such as gross sexual imposition, R.C. 2907.05, which requires only sexual contact." *State v. Davis*, 76 Ohio St.3d 107, 114, 666 N.E.2d 1099 (1996).

{¶ 13} S.V. described the attempted rape at issue here as follows:

"(Interpreter) I remember that I was waking — I woke up, I was getting ready to get up, and I heard him coming out of my mother's room and I heard the steps, and then he walked into the room. The door — the lock in my room didn't work, so we couldn't lock it. We could just close it. So that's why I didn't lock the door. And then he enter in the room and I had the comforter, I was wrapped in the comforter, and he tried to remove the comforter from me. I was wrapped in the comforter and he tried — he struggled. He wanted to take the comforter away from me, and I hold onto the comforter and I said no. I was crying. I was hysterical. I was asking him to leave the room. He said if you don't let me do it, it's going to be worse for you. And he didn't leave, saying you're going to see what's going to happen. That's when he left the room.

Rodriguez argues that from this testimony it is impossible to conclude that he was attempting to rape S.V. Essentially, he argues that there is no way to conclude that he was attempting sexual conduct as opposed to sexual contact. We disagree.

{¶ 14} During her direct examination, S.V. testified in detail about other instances over time in which Rodriguez assaulted her:

Q. Okay. So I want to go back. We're talking about — we know what room we're talking about now, and you said something happened in the middle of the night. Can you tell us what happened?

A. (Interpreter) Yes.

Q. Okay. What happened?

A. (Interpreter) When I was sleeping in the room, Jonathan will walk into the room, and I will wake up very scared and he will just touch me in my parts.

Q. Would you wake up before he touched you?

A. (Interpreter) Because I knew that he would walk into the room at any time, I will hear. I was already with that in my head that will hear the steps in the room. And every time I heard the steps I will wake up very scared.

Q. Because this wasn't the first time that this happened, right?

A. (Interpreter) Correct.

Q. Okay. So you said he would come into the room and he would touch your parts. Can you be more specific about what he touched?

A. (Interpreter) My vagina.

Q. Okay. And what would he touch your vagina with?

A. (Interpreter) He penetrated his fingers.

* * *

Q. So you just told us about a time you remember something happening in this bedroom [at your home on Hague Avenue]. Do you remember other times where Jonathan touched you when you were living in the United States?

A. (Interpreter) Well, several times at the same house.

Q. Okay. You said several times at the same house.

Was it in the same room or in a different room?

A. (Interpreter) In the same room.

\* \* \*

Q. So the time we talked about yesterday, was that the first time that Jonathan touched you on Hague?

A. (Interpreter) Yes.

Q. Okay. And you told us yesterday, I think, that there were more times that this happened in that Hague house; is that right?

A. (Interpreter) Yes, that's correct, several times.

Q. Okay.  So this happened several more times.  And how often did you tell us it would happen when you were in the Hague house?

A. (Interpreter) Let's say that in a month, probably two times. It didn't happen that many times per month.

{¶ 15} From this evidence, viewed in a light most favorable to the prosecution, we conclude that Rodriguez's attempted rape conviction is supported by sufficient evidence.  In light of Rodriguez's repeated history of entering S.V.'s room and digitally penetrating her, there was sufficient evidence to infer that it was his intention to do the same during the event described.

**Sexually Violent Predator Specifications**

{¶ 16} Rodriguez argues that there was insufficient evidence presented to substantiate the sexually violent predator specifications attached to the rape and attempted rape counts.  The core of Rodriguez's argument is that it was improper for the jury to consider as evidence establishing the sexually violent predator specifications, any evidence presented in support of the counts for which he was found not guilty.

{¶ 17} R.C. 2971.01(H) provides:

(1) "Sexually violent predator" means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.

(2) For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

{¶ 18} "R.C. 2971.01(H)(2) provides a nonexclusive list of factors that the trial court 'may' use in determining that a defendant is likely to engage in sexually violent offenses in the future, and the trial court is free to consider 'any other relevant evidence' as provided in the catchall provision of R.C. 2971.01(H)(2)(f)." *State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 36,

quoting *State v. T.E.H.*, 10th Dist. Franklin Nos. 16AP-384, 16AP-385 and 16AP-386, 2017-Ohio-4140, ¶ 72; *see also State v. A.M.*, 8th Dist. Cuyahoga No. 106400, 2018-Ohio-4209, ¶ 46 ("Under R.C. 2971.01(H)(1), as amended in 2005, a sexually violent offense in the current indictment can be the basis for a sexually violent predator specification.").

{¶ 19} As such, the jury could permissibly consider evidence pertaining to counts for which Rodriguez was ultimately found not guilty in determining whether he was a sexually violent predator. Viewing the evidence in a light most favorable to the prosecution, we reject Rodriguez's argument that there was insufficient evidence to support the sexually violent predator specifications.

{¶ 20} We overrule this assignment of error.

**Manifest Weight of the Evidence**

{¶ 21} In his second assignment of error, Rodriguez argues that his convictions are against the manifest weight of the evidence.

{¶ 22} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). A manifest weight challenge attacks the credibility of the evidence presented and questions whether the prosecution met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26. It "addresses the evidence's effect of inducing belief," i.e., whether the state's or the defendant's

evidence is more persuasive. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264.

{¶ 23} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Evaluating a challenge to the weight of the evidence requires this court to review the record, weigh the evidence and reasonable inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and thereby created a manifest miscarriage of justice. *Id.* Reversal on the weight of the evidence is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**Sexually Violent Predator Specifications**

{¶ 24} Rodriguez argues that his sexually violent predator specification convictions are against the manifest weight of the evidence. Rodriguez redeploys his sufficiency argument as a basis for concluding that the convictions are against the manifest weight of the evidence. He claims that, absent consideration of the evidence pertaining to counts for which he was found not guilty, the evidence did not "amount to 'chronically' committing offenses with a sexual motivation" as required by statute. He claims that there is nothing in his past suggesting he is likely

to reoffend and that this is further supported by the presentence investigation report.

{¶ 25} Rodriguez does not identify any conflicting evidence that, in resolving, the jury lost its way. This is not the exceptional case in which the evidence weighs heavily against conviction. The sexually violent predator specifications are not against the manifest weight of the evidence.

**Rape, Attempted Rape and Gross Sexual Imposition**

{¶ 26} Rodriguez asserts that his convictions for rape, attempted rape and gross sexual imposition "rests on the testimony of [S.V.] alone, as there was no physical evidence and no corroborating evidence." Rodriguez claims that S.V.'s testimony is against the weight of the evidence "in light of the inconsistencies, motivation to be untruthful, and other errors."

{¶ 27} To substantiate his claim, Rodriguez refers to portions of B.S.'s testimony which he claims are inconsistent with her daughter S.V.'s testimony. For example, B.S. testified that she had a close relationship with her children and believed that they confided in her. She claimed that she was always with her children and observed their interactions with Rodriguez and that she never observed any "strange" interactions. She also claimed that the allegations against Rodriguez could not be true in light of the fact that the house was full of people. B.S. also claimed that S.V.'s reason for going to Puerto Rico was not to flee Rodriguez's abuse, but rather she was "already finished school" and "asked [her] to send her to Puerto Rico and enroll her in school."

{¶ 28} Further, in support of his manifest weight claim, Rodriguez attacks S.V.'s credibility. He asserts that S.V.'s claims are suspect to the extent that she did not disclose the abuse until roughly one year after police began investigating her sisters' abuse claims. He also claims that there was inconsistency in S.V.'s recollection of the time frame of the abuse. For example, in some places S.V. claimed the abuse occurred when she was between 12 and 14 years old. Elsewhere she claimed abuse happened when she was 15. Rodriguez also notes that at one point in S.V.'s testimony, she claimed that Rodriguez touched only her vagina but she also claimed that he touched her breast. Rodriguez also challenges S.V.'s testimony to the extent that she was unable to remember the exact number of times he abused her, claiming that her testimony "seems suspect in light of the nature of the conduct and the likely impact the conduct would have on a person who was allegedly being assaulted." Rodriguez concludes that "[i]f this were true, it can be argued that [S.V.] would have had a more vivid recollection of events."

{¶ 29} Regardless of whether there is some conflict between B.S.'s testimony and S.V.'s testimony, there is no material inconsistency as to the evidence that Rodriguez committed the actual crimes of conviction. *See State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 37 ("A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony."). As to S.V.'s testimony about being a child who was sexually abused by her stepfather over the course of several years, the jury was free to reject any portion that was inconsistent, problematic or otherwise unbelievable. *State v. Shutes*, 8th Dist.

Cuyahoga No. 105694, 2018-Ohio-2188, ¶ 49 ("The trier of fact may take note of any inconsistencies and resolve them accordingly, choosing to believe all, none, or some of a witness's testimony."). Rodriguez cannot manufacture a manifest weight of the evidence issue from the fact that the convictions are based solely upon S.V.'s testimony and are not corroborated by other evidence. *See State v. Daniels*, 8th Dist. Cuyahoga No. 92563, 2010-Ohio-899, ¶ 58 ("There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction."); *see also State v. Gunter*, 8th Dist. Cuyahoga No. 95775, 2011-Ohio-3388, ¶ 33 ("Ohio courts have consistently held that a rape conviction may rest solely on the victim's testimony, if believed.").

**{¶ 30}** Here, the jury heard the testimony, including S.V.'s account, and it chose to believe her regarding the counts of rape, attempted rape and two counts of gross sexual imposition. Based on the record before us we cannot say that the trier of fact clearly lost its way. As such, we find the convictions are not against the manifest weight of the evidence. We overrule this assignment of error.

**Prosecutorial Misconduct**

**{¶ 31}** In his third assignment of error, Rodriguez claims he was denied a fair trial because of prosecutorial misconduct. He asserts that there were three such instances. First, he claims it was improper for the state to argue to the jury, for purposes of the sexually violent predator specifications, that it should consider evidence of counts for which he was found not guilty. Second, he claims the state impermissibly revealed that Rodriguez was incarcerated during the trial. Third,

Rodriguez claims the state impermissibly cross-examined him regarding his past sexual activity.

{¶ 32} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 364, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." *State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 68, citing *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "'Given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 40, quoting *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (emphasis deleted).

{¶ 33} Based on Rodriguez's failure to object to the alleged misconduct during trial, we are limited in our review to plain error. *See Marshall* at ¶ 68. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The plain error rule is to be invoked only under "exceptional circumstances to avoid a

manifest miscarriage of justice." *Chagrin Falls v. Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, ¶ 52, citing *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1987). There is no plain error where, absent the error, the outcome of trial clearly would have been different. *Id.*

**Sexually Violent Predator Specifications**

{¶ 34} Rodriguez claims that it was misconduct for the state to argue that the jury should consider as evidence for the sexually violent predator specifications, evidence that pertained to the counts for which he was found not guilty. As discussed previously, it is permissible for a jury to consider "any other relevant evidence." *State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 36. This includes considering "a sexually violent offense in the current indictment" as the basis for a sexually violent predator specification. *State v. A.M.*, 8th Dist. Cuyahoga No. 106400, 2018-Ohio-4209, ¶ 46. There is no merit to this challenge because Rodriguez fails to demonstrate prejudice.

**Mention of Incarceration During Trial**

{¶ 35} Rodriguez argues that it was misconduct for the prosecutor to reveal to the jury that he was incarcerated at the time of trial. As the basis of this claim, Rodriguez refers to his cross-examination as to the contents of a letter he wrote to the court:

Q. And is that the letter that you wrote to the Judge on July 5th of 2019?

A. (Interpreter) Yes.

Q. Okay. And you wrote in this letter that when you were in jail, one of the corporals broke your leg. Do you remember saying that to the Judge?

A. (Interpreter) No, he didn't break my leg. I didn't break my leg. What happened is that they threw me on the ground, and when he threw me on the ground it hurt my knee when he tried to put me in the floor. And also the way he threw me on the ground, he broke my tooth.

Q. Okay. My question was, do you remember writing in the letter that the corporal broke your leg?

{¶ 36} This court has observed that verbal reference to a defendant's jail status is similar to wearing prison or jail clothing to the extent that it "erodes the presumption of innocence." *State v. Watters*, 8th Dist. Cuyahoga No. 82451, 2004-Ohio-2405, ¶ 14, citing *State v. Heckler*, 4th Dist. Pickaway No. 93CA10, 1994 Ohio App. LEXIS 3248 (July 15, 1994). "Whether the reference is visual or verbal, the potential for prejudice is the same." *Id.* at ¶ 15.

{¶ 37} However, the improprieties of a reference to a defendant's jail status aside, where the question and answer do not affect the outcome of the trial, there is no unjust prejudice. *See id.* at ¶16; *see also State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 107 ("[A]ppellant's custodial status does not have the same impact as wearing prison clothing throughout a trial."); *see also State v. Gaona*, 5th Dist. Licking No. 11 CA 61, 2012-Ohio-3622, ¶ 37 ("single isolated comment about the presence of deputies falls well short of [defendant appearing in jail clothing]"); *see also Chagrin Falls v. Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, ¶ 55, quoting *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996) ("'[I]solated comments by a prosecutor are not to be taken out of

context and be given their most damaging meaning,' and we must review the challenged statements within the context of the entire trial.").

{¶ 38} Here, Rodriguez does not demonstrate that unjust prejudice resulted from the prosecutor's reference to his jail status. To the contrary, his claim is merely that the reference "may have influenced the jury."

{¶ 39} We note that during a subsequent point in Rodriguez's testimony during cross-examination, Rodriguez stated that he was incarcerated:

Q. Okay. Are you dating anyone currently?

A. (Interpreter) I'm not going out with anyone now because I'm in prison here * * *.

There is additional indication that Rodriguez was not prejudiced by the prosecutor's mention of his jail status. Although Rodriguez was found guilty of four counts, the jury acquitted him of the remaining 24 counts. Compare *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 95 (8th Dist.), quoting *State v. Banks*, 8th Dist. Cuyahoga, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 64 ("[D]efendant was 'unable to show that he was prejudiced by the trial court's refusal to sever his offenses' where he was acquitted of some charges and convicted of lesser offense in others.").

**Past Sexual Activity**

{¶ 40} Rodriguez argues the third instance of prosecutorial misconduct occurred during his cross-examination where, over objection, the state inquired into his past sexual activity.

{¶ 41} In general, and subject to specified exceptions that do not pertain to this case, evidence of specific instances of a defendant's sexual activity are

inadmissible in prosecutions for rape, in violation of R.C. 2907.02 and gross sexual imposition, in violation of R.C. 2907.05. *State v. Jeffries*, 160 Ohio St.3d 300, 2020-Ohio-1539, 156 N.E.3d 859, ¶ 14. However, a defendant waives this statutory prohibition after interjecting or "opening the door" to the issue of his own prior sexual activity. *State v. Howell*, 2d Dist. Greene No. 2019-CA-7, 2020-Ohio-821, ¶ 29, citing *State v. Gauntt*, 8th Dist. Cuyahoga No. 63792, 1993 Ohio App. LEXIS 4645, 1993 WL 389470, 4 (Sept. 30, 1993).

{¶ 42} During Rodriguez's direct examination, counsel elicited the following regarding Rodriguez's past sexual activity:

Q. So, Mr. [Rodriguez], I think we've established that you have — you had problems with [the victim's mother]?

A. (Interpreter) Yes, plenty.

* * *

Q. So did there come time when that friction in your relationship caused you to a have relationships with other people?

A. (Interpreter) In 2016, [another woman] texted me. That was in 2016. I had a very friendly communication with her without her knowing, [the victim's mother] knowing about it. Yes, I did sleep with her.

Q. And what?

A. (Interpreter) I did sleep with her.

Q. Okay. So was there more than that person?

* * *

A. (Interpreter) There was another girl I just dated without anybody knowing, and I'm very ashamed of saying this.

Q. Okay. Anyone else?

A. (Interpreter) I just fooled around with three other women. I was just experimenting my life and my youth.

{¶ 43} During Rodriguez's cross-examination, the state inquired about these women as well as other women with whom he had been involved. Because Rodriguez had previously offered evidence regarding his past sexual history, the state did not violate the statutory limitation regarding specific instances of his sexual activity with its inquiry. *See Howell* at ¶ 29.

{¶ 44} We overrule the third assignment of error.

## Impeachment Evidence

{¶ 45} In his fourth assignment of error, Rodriguez claims that the trial court made several erroneous rulings regarding his attempts to impeach witnesses on cross-examination.

{¶ 46} "It is well settled that 'the trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240, quoting *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

## Impeaching K.R. with Police Statement

{¶ 47} Rodriguez argues that the trial court erred by prohibiting him from attempting to impeach K.R. with a prior consistent statement. Rodriguez asserts that, pursuant to Evid.R. 801(D)(2), he should have been able to cross-examine K.R.

with her statement to police regarding consistencies between it and her testimony because it constituted an admission by a party opponent. We disagree.

{¶ 48} We observe that Rodriguez was acquitted of all of the counts pertaining to K.R. As such, he fails to demonstrate any prejudice resulted from not being able to use K.R.'s police statement to impeach her.

{¶ 49} Nevertheless, K.R. was an alleged victim, not a party to the case. By its own terms, Evid.R. 801(D)(2) is confined to admissions by party-opponents. *See State v. Ingram*, 12th Dist. Butler No. CA2006-01-012, 2006-Ohio-4559, ¶ 8 ("[A]n alleged victim who testifies as a witness for the state is not a party-opponent within the meaning of Evid.R. 801(D)(2)."); *State v. Williams*, 7th Dist. Mahoning No. 09 MA 11, 2010-Ohio-3279, ¶ 32 ("[A] victim in a criminal case is not a party-opponent for purposes of Evid.R. 801(D)(2).").

{¶ 50} We find no abuse of discretion.

**Impeaching S.V. With Prior Inconsistent Statements**

{¶ 51} Rodriguez argues that the trial court erred by prohibiting him from attempting to impeach S.V. with a prior inconsistent statement. Rodriguez does not provide citation to any portion of the police statement and he does not provide citation to the portion of S.V.'s testimony that is allegedly inconsistent. Instead, Rodriguez cites a portion of the trial transcript where his counsel discussed the statement with the court at a sidebar. After that discussion, the court concluded "it can't just be a difference. It has to be a material difference." Rodriguez's counsel

responded "[y]eah, that's fine. I don't need to impeach her with the transcript on that one."

{¶ 52} Rodriguez asserts this was error because S.V. "used a very different tone" in her statement to police as compared to her testimony during direct examination. However, he neither claims nor cites any rule, statute or other authority that the court violated or otherwise demonstrates that the court abused its discretion.

{¶ 53} Rodriguez also asserts that material differences aside, he should have been able to question S.V. about her police statement pursuant to Evid.R. 607 and 801. He does not, however, develop any argument in support of this assertion.

{¶ 54} "'[I]t is not the duty of this Court to develop an argument in support of an assignment of error if one exists.'" *State v. Collins*, 8th Dist. Cuyahoga No. 89668, 2008-Ohio-2363, ¶ 91, quoting *State v. Franklin*, 9th Dist. Summit No. 22771, 2006-Ohio-4569, ¶ 19. "An appellate court is not obliged to construct or develop arguments to support an appellant's assignment of error and 'will not "guess at undeveloped claims on appeal."'" *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 56 (8th Dist.).

**Impeachment by Omission**

{¶ 55} Rodriguez claims he was prejudiced by the court prohibiting him from cross-examining witnesses with prior statements "utilizing impeachment by omission."

**{¶ 56}** During trial, Rodriguez sought to impeach witnesses by comparing specific details included in their trial testimony that they did not mention when interviewed by police.

**{¶ 57}** This court has observed that a witness' testimony at trial that includes details that were not included in a police interview does not necessarily constitute a material inconsistency. *See, e.g., State v. Hartford*, 21 Ohio App.3d 29, 31, 486 N.E.2d 131 (8th Dist.1984). "'Certain details related to the police may naturally not be brought up on direct examination and some details omitted from a witness statement may naturally crop up for the first time at trial, and it is not appropriate to consider the omission of such details to be "inconsistencies."'" *State v. Kenney*, 8th Dist. Cuyahoga No. 80653, 2004-Ohio-972, ¶ 9, quoting *State v. Hartford*, 21 Ohio App.3d 29, 31, 486 N.E.2d 131 (8th Dist.1984).

**{¶ 58}** Here, Rodriguez argues that he should have been able to impeach S.V. to the extent that she testified that she went back to Puerto Rico to escape Rodriguez's abuse but failed to indicate that to the police during her interview. He also claims that he should have been able to impeach one of the stepsisters to the extent that she testified as to her awareness of her sisters being abused by Rodriguez but failed to disclose this to police during her interview.

**{¶ 59}** Rodriguez argues that this case is similar to *State v. Blackman*, 8th Dist. Cuyahoga No. 88608, 2007-Ohio-4168. In *Blackman*, this court found no error in the state cross-examining the defendant regarding omissions from a written statement he prepared and gave to police:

> By giving the police a written statement, appellant left himself open to impeachment on any matters of importance that were omitted from that statement. On cross-examination, he admitted that he did not inform the police that the victim had repeatedly tried to contact him after he moved out of her mother's house. This is the sort of significant detail which would have been natural to mention in the prior statement, and hence was subject to impeachment because of its omission.

*Id.*, at ¶ 22.

{¶ 60} We find that *Blackman* is distinguishable. Initially, we note that S.V. and A.R. were children who claimed to be victims of sexual assault, not defendants in a criminal prosecution. They did not give the police a written statement. Instead, the girls were asked questions by the police. Moreover, the police did not specifically ask S.V. if Rodriguez's abuse was the reason she went to Puerto Rico and they did not ask A.R. whether she was aware her sisters were being abused by him.

{¶ 61} Rodriguez additionally makes the unsupported assertion that Evid.R. 613(C) provides for "[i]mpeachment by omission." Evid.R. 613(C) provides:

> During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of the prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements by Evid.R. 613(B)(2).

{¶ 62} Assuming for the moment that Evid.R. 613(C) does apply here, we nevertheless reject Rodriguez's assertion to the extent that the girls' testimony during trial is not inconsistent with answers they did *not* give to questions they were *not* asked.

{¶ 63} We find no abuse of discretion.

**Rule of Completeness**

{¶ 64} Rodriguez claims that the trial court violated Evid.R. 106 during the following sidebar with counsel during the detective's cross-examination:

> [Prosecutor]: Judge, just a heads up for the court reporter, based on where the cross-examination goes, I may ask to play the full statements of the girls on redirect.
>
> The Court: That's the other thing is that when you introduce portions of witness statements, the rule of completion allows the entire one to come in.
>
> [Counsel]: I understand. I do understand.

{¶ 65} Evid.R. 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it.

"The overriding purpose of the rule is to prevent adverse parties from taking statements or writings out of context and distorting them." *Perry v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 83034, 2004-Ohio-4098, ¶ 57; *State v. Barna*, 9th Dist. Lorain No. 93CA005564, 1993 Ohio App. LEXIS 5345 (Nov. 3, 1993).

{¶ 66} Here, although Rodriguez proceeded to cross-examine the detective, making specific reference to the girl's statements to police, the state did not subsequently seek to introduce additional portions of those statements. As such, the court never determined whether any such portion was admissible under Evid.R. 106 and thus, did not violate the rule. We find no abuse of discretion.

{¶ 67} Accordingly, we overrule the fourth assignment of error.

**Improper Character and Other Acts Evidence**

{¶ 68} In his fifth assignment of error, Rodriguez argues that the state improperly presented instances of character and other acts evidence by introducing evidence of his domestic violence convictions as well as evidence from his social media accounts.

**Domestic Violence**

{¶ 69} Rodriguez argues that the trial court erred by permitting a detective to testify regarding two incidents of domestic violence involving the appellant and the girl's mother, B.S. He claims it was also error for the trial court to permit B.S. to testify that Rodriguez physically abused her and pointed a gun at her as well as to allow the state to introduce a photograph of their house showing a bullet hole in the ceiling.

{¶ 70} However, during B.S.'s cross-examination, Rodriguez's counsel engaged in the following line of questioning regarding their relationship:

Q. So, ma'am, you were with [Rodriguez] for I believe eight years; is that right?

A. (Interpreter) Yes.

Q. And during those eight years, would it be fair to say that you had basically a husband and wife relationship with [Rodriguez]?

A. (Interpreter) Yes.

Q. You had good times and you had bad times?

A. (Interpreter) Yes.

Q. You went out at times with him?

A. (Interpreter) Yes.

Q. Did you all make love?

[Prosecutor]: Objection.

The Court: Sidebar.

{¶ 71} By eliciting testimony from B.S. regarding Rodriguez's character as a romantic partner, he gave the state the opportunity to rebut that testimony. Evid.R. 404(A)(1) ("Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *."); *see also State v. Garcia*, 8th Dist. Cuyahoga No. 102546, 2016-Ohio-585, ¶ 69 ("Because the defense opened the door and placed [defendant's] character at issue, the state was entitled to rebut that testimony * * *.").

{¶ 72} We find no abuse of discretion.

**Other Police Interactions**

{¶ 73} Rodriguez next claims that the state improperly questioned him regarding two specific incidents with police.

{¶ 74} Prior to the state's questioning regarding the incidents, Rodriguez was asked, during direct examination, whether he had "been in trouble before" the domestic violence incidents with B.S.

{¶ 75} Rodriguez testified that "I had some conflict in 2013, 2014 * * * but it wasn't anything all that serious." He then proceeded to describe an altercation that occurred while driving in a car. Rodriguez explained that "someone came and tried to side swipe us just out of spite." He explained that he was carrying a firearm and

that the other driver "pulled out a weapon." In response "I had the idea of pulling out this badge that was in my friend's car, and I showed it to them so we wouldn't have any more trouble." Rodriguez further explained that the badge was "just like a children's toy, that's all it was."

{¶ 76} Rodriguez's counsel then asked him whether he had "any other trouble with the police other than traffic violations." In response, Rodriguez detailed a shoplifting incident involving B.S. and himself. He did not discuss any other incident.

{¶ 77} During Rodriguez's cross-examination, he agreed that he characterized his interactions with police as "a little conflict, not all that serious." The state then inquired about an incident at U.S. Cotton after his employment there had been terminated. The prosecutor inquired whether Rodriguez threatened to "shoot anyone who tried to have [him] removed," whether "it took police two and a half hours to clear out the 250 employees while they searched for you" and whether he considered that conduct "serious."

{¶ 78} The state also inquired into the circumstances surrounding the incident where Rodriguez brandished a "police" badge and Rodriguez admitted that he was pretending to be a police officer.

> There are two methods of impeachment by contradiction — self-contradiction under Evid.R. 613 and specific contradiction pursuant to Evid.R. 616. Pursuant to Evid.R. 613(C), prior inconsistent conduct, the rule allows that "[d]uring examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach." Under Evid.R. 616(C), specific contradiction, "facts contradicting a witness's testimony may be shown for the purpose of

impeaching the witness's testimony." Under both of these rules, limitations exist on the use of extrinsic evidence when the facts or conduct are offered solely for impeaching a witness's testimony.

*State v. Serrano*, 2016-Ohio-4691, 69 N.E.3d 87, ¶ 36 (8th Dist.).

{¶ 79} Accordingly, we find the state's questions were not improper. The state merely inquired as to inconsistencies; it did not seek to introduce extrinsic evidence.

{¶ 80} We find no abuse of discretion.

**Social Media**

{¶ 81} Rodriguez argues the trial court impermissibly permitted the state to introduce evidence of his social media postings including images of women as well as a video depicting him with firearms.

**Images**

{¶ 82} During direct examination, Rodriguez introduced several photographs that he had posted to social media depicting him with his children, stepchildren and their mother. He discussed how family members "liked" or "loved" these photographs.

{¶ 83} During cross-examination, the state introduced different social media postings made by Rodriguez, including those of women posing in bikinis and lingerie.

{¶ 84} Evid.R. 404(A)(1) provides:

Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *.

Rodriguez was certainly permitted to offer evidence of his good character and as a family man which he did by introducing photographs of himself with his family. Evid.R. 404(A)(1) also permits the state to offer evidence to rebut that claim which it did by introducing Rodriguez's postings of scantily clad women.

{¶ 85} We cannot conclude that the court abused its discretion by permitting the state to cross-examine Rodriguez regarding these images.

**Video**

{¶ 86} During direct examination, Rodriguez testified that he purchased one firearm and that it was the only firearm that he had ever owned. During cross-examination, however, the state introduced one of Rodriguez's music videos featuring images of Rodriguez with multiple firearms wearing what appeared to be a clown mask. The state argued that it was admissible as "bad character evidence" because Rodriguez brought his own character into question by introducing the social media photos of himself with his family "portraying him as a good person who wouldn't do these sorts of things that he's accused of." The court allowed the video into evidence because one of Rodriguez's children testified that he was "a clown" and because some of the photographs of Rodriguez with various firearms appeared to depict "inside what looked to be a residence."

{¶ 87} Rodriguez argues that the court violated Evid.R. 608 when it admitted the video depicting him with the firearms. In relevant part, Evid.R. 608(B) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶ 88} The state argues that the video was admissible as a specific contradiction pursuant to Evid.R. 616(C). Evid.R. 616(C) permits the introduction of a testifying witness' conduct that is inconsistent with the witness' testimony for purposes of impeachment. Evid.R. 616(C) limits the use of extrinsic evidence of contradiction offered for the sole purpose of impeaching a witness' testimony, making such evidence inadmissible unless the evidence is one of the following:

(1) Permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706;

(2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence.

{¶ 89} Relevant to this case, the video was admissible pursuant to Evid.R. 616(A) which provides that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶ 90} Even assuming that it was error for the court to admit the video, any resulting prejudice is harmless. There was no dispute that Rodriguez is a musician and that images with firearms were part of a music video. As such, the mere depiction of him holding different guns than the one he claimed to own does not establish ownership.

**{¶ 91}** We cannot say that the trial court abused its discretion by allowing the video into evidence.

**{¶ 92}** We overrule the fifth assignment of error.

**{¶ 93}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry out this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR