[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jeffries*, Slip Opinion No. 2020-Ohio-1539.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1539

THE STATE OF OHIO, APPELLEE, *v*. JEFFRIES, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jeffries*, Slip Opinion No. 2020-Ohio-1539.]**

*Ohio's rape-shield law—R.C. 2907.02(D) and R.C. 2907.05(E)—Both consensual and nonconsensual sexual activity are barred from admission into evidence by Ohio's rape-shield law, absent one of the specific exceptions listed in the law.*

(No. 2018-0338—Submitted March 27, 2019—Decided April 22, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 105379, 2018-Ohio-162.

_____

**DONNELLY, J.**

{¶ 1} In this discretionary appeal we are asked to determine whether Ohio's rape-shield law prohibits the admission of evidence of an accuser's prior nonconsensual sexual activity. Appellant, Cedric Jeffries, asserts that the rape-shield law applies only to an accuser's prior consensual sexual activity and that he

was wrongfully prohibited from introducing evidence at his jury trial for rape and kidnapping that the accuser, D.S., had previously been sexually assaulted by another person.

{¶ 2} We hold that Ohio's rape-shield law unambiguously applies to both consensual and nonconsensual sexual activity. The trial court and Eighth District Court of Appeals correctly applied Ohio's rape-shield law and determined that evidence of D.S.'s prior sexual assault was inadmissible. We therefore affirm the judgment of the Eighth District Court of Appeals upholding Jeffries's convictions.

## BACKGROUND

{¶ 3} D.S.'s mother lost custody of D.S and two of D.S.'s half-siblings during the early years of the children's lives. The children then went into foster care. D.S. lived in three different foster homes before she was six years old. In 2006, when D.S. was six years old, H.G., Jeffries's mother, obtained custody of D.S. and her two half-siblings. Jeffries lived in the home with H.G. and the children. Jeffries is the biological father of one of D.S.'s half-siblings. Although D.S. was not Jeffries's biological child, he was a father figure to her. D.S. lived with H.G. and Jeffries until March 2016, when D.S. reported that Jeffries had repeatedly sexually abused her over the course of approximately nine years.

{¶ 4} The state decided to pursue four criminal charges against Jeffries related to two specific instances of sexual abuse. Pursuant to a grand-jury indictment, Jeffries was charged with kidnapping and raping D.S. when she was 12 years old and kidnapping and raping D.S. when she was 16 years old.

{¶ 5} During the discovery process, counsel for the defense and the state were permitted to review D.S.'s child-abuse-investigation records maintained by the Cuyahoga County Department of Children and Family Services. Those records revealed that when D.S. was four or five years old, she reported to the children-services agency that a foster brother had sexually assaulted her.

{¶ 6} On the first day of Jeffries's jury trial, prior to voir dire, defense counsel indicated that she did not plan on questioning D.S. about her prior allegation of sexual abuse and therefore would not need the court to conduct an in camera hearing pursuant to *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), to determine whether such questions would be prohibited by the rape-shield law. Counsel apparently reconsidered soon after, and on the next day, after voir dire had begun, the trial court took a break from voir dire and conducted a *Boggs* hearing. At the hearing, D.S. testified that when she was four or five years old and living in a foster home, a foster brother living with her had touched her inappropriately and compelled her to engage in vaginal intercourse. She testified that she had been truthful when reporting the incident to the children-services agency. The trial court concluded that the incident involved sexual activity and therefore it appeared it should be barred from admission into evidence by Ohio's rape-shield law.

{¶ 7} Defense counsel argued that although D.S.'s prior sexual assault involved sexual activity, the rape-shield law and *Boggs* did not prevent the admission of evidence about that assault, because the sexual activity was nonconsensual. The defense argued that the purpose of the rape-shield law is limited to protecting victims from being harassed about their consensual sexual history and therefore prior sexual assaults are outside the scope of protection. Defense counsel asserted that the evidence was necessary for the purpose of establishing D.S.'s "knowledge of the system" and for potentially rebutting any inference the jury might make that D.S.'s behavioral issues around age nine or ten were the result of sexual abuse by Jeffries.

{¶ 8} The trial court rejected the defense's argument and held that Ohio's rape-shield law and *Boggs* address all sexual activity, not only consensual sexual activity. Because the judge did not want to continue to make the prospective jurors

wait to finish voir dire, she told counsel that she would explain her analysis in more detail later.

{¶ 9} The following day, after several witnesses had testified and the jury had been released for the day, the judge explained in more detail her rape-shield ruling. She stated that the plain language of the rape-shield law prevented the admission of the evidence, that she was satisfied from the evidence presented that D.S.'s allegation of abuse by her foster brother was true, and that the caselaw submitted by the defense was not controlling or persuasive.

{¶ 10} Defense counsel then asserted that the evidence of the prior assault should be admitted to explain H.G's testimony describing D.S.'s acting-out behavior. The judge noted that she had prohibited the state from implying that D.S.'s behavioral issues were connected with molestation, absent the provision of expert testimony to establish that connection. Also, the judge indicated that the evidence of the prior sexual assault was not particularly relevant given that there had been no evidence that D.S. had behavioral issues around age four or five and very little evidence that D.S. later acted out in a way that was abnormal for a preteen who had lived in multiple foster homes.

{¶ 11} During Jeffries's trial, the state presented evidence indicating that Jeffries had molested D.S. over the course of approximately nine years and that he had compelled D.S. to engage in vaginal intercourse on multiple occasions, including two specific incidents—one when D.S. was 12 years old and another when she was16 years old. The jury found Jeffries guilty of all four counts. After merging certain counts for purposes of sentencing, the trial court imposed an aggregate prison sentence of 15 years to life and classified Jeffries as a Tier III sex offender.

{¶ 12} Among his arguments on appeal, Jeffries asserted that prior instances of nonconsensual sexual activity are outside the scope of the rape-shield law and are therefore admissible. And because the sexual assault by D.S.'s foster

brother was admissible, Jeffries argued, the trial court's exclusion of the evidence violated Jeffries's constitutional right to confront the witnesses against him. The appellate court rejected Jeffries's argument on authority of *Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813. It noted that *Boggs* referred to "sexual activity" as including both nonconsensual and consensual sex and that *Boggs* held that evidence of "either type of activity" is barred from admission by the rape-shield law, *Boggs* at 423. The appellate court therefore affirmed the trial court's ruling on the applicability of the rape-shield law.

{¶ 13} We accepted one proposition of law for review:

> Ohio's rape shield law prohibition on the admission of "specific instances of the victim's sexual activity" applies only to consensual sex [and does not apply to] questions related to prior sexual abuse.

*See* 152 Ohio St.3d 1477, 2018-Ohio-1989, 98 N.E.3d 292.

**ANALYSIS**

{¶ 14} Ohio's rape-shield law protects both the accuser and the defendant from the admission of evidence of prior sexual activity. The law is contained in statutes defining the crimes of rape, R.C. 2907.02, and gross sexual imposition, R.C. 2907.05, both of which include the following:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence

is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D); R.C. 2907.05(E).

{¶ 15} Our resolution of this case turns on the meaning of the term "sexual activity" as it is used in R.C. 2907.02 and 2907.05. The meaning of statutory language is a question of law, which we review de novo. *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6. A fundamental preliminary step in our analysis of any legislation is to review the plain language of the statute. *Id*. at ¶ 7. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). When there is no ambiguity on the face of the statute, it must simply be applied as written. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994).

{¶ 16} We must read statutory words and phrases in context and construe them in accordance with the rules of grammar and common usage. *State ex rel. Barley v. Ohio Dept. of Job & Family Servs.*, 132 Ohio St.3d 505, 2012-Ohio-3329,

974 N.E.2d 1183, ¶ 20. But words and phrases that have a technical or particular meaning by legislative definition must be construed accordingly. *Id.* at ¶ 21. "Where a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute." *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 267 N.E.2d 781 (1971), at paragraph two of the syllabus.

{¶ 17} For purposes of R.C. 2907.01 through 2907.38, the General Assembly defines "sexual activity" as "sexual conduct or sexual contact, or both" and defines "sexual conduct" and "sexual contact" as follows:

> (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

> (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

R.C. 2907.01. The foregoing definitions do not reflect any terminology that would exclude nonconsensual sexual activity. "Sexual conduct" is defined quite clinically in terms of specific physical actions. The definition for "sexual contact" makes it clear that the contact does not have to be wanted by both parties involved; it must be wanted only by "either person."

**{¶ 18}** Nothing in the plain language of the statute indicates that "sexual activity" means "consensual sexual activity." Such an interpretation in fact would contravene our clear duty not to alter the language of a statute by adding or removing words. *See Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, 138 N.E.3d 1108, ¶ 16, citing *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 39-40, 741 N.E.2d 121 (2001), *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973), and *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus. Accordingly, the plain meaning of "sexual activity" does not contain any volitional element.

**{¶ 19}** Other uses of the term "sexual activity" as defined in R.C. 2907.01 within the Revised Code are consistent with our reading of the definition. For example, R.C. 2907.322 prohibits the pandering of materials depicting minors involved in "sexual activity," which certainly includes nonconsensual sexual activity. *See State v. Meadows*, 28 Ohio St.3d 43, 49, 503 N.E.2d 697 (1986). When consent, or lack thereof, is relevant to an offense, it is an independent element that must be proved separately from the element of sexual activity. For example, to prove rape, the state must prove both that sexual conduct occurred, R.C. 2907.02(A)(1), and that force was used or the victim was unable to consent, R.C. 2907.02(A)(1)(a) through (c). *See also* R.C. 2907.02(A)(2) ("No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force").

**{¶ 20}** Moreover, our reading of the rape-shield law as applying to nonconsensual sexual activity is consistent with our decision in *Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813. When reviewing Boggs's appeal from his convictions for rape, kidnapping, and felonious assault, the Fourth District Court of Appeals held that the rape-shield law did not cover *any* prior accusations of rape, because they did not constitute "sexual activity." *State v. Boggs*, 4th Dist. Adams No. CA

494, 1991 WL 13735, at \*7-8. The Fourth District's decision was found to be in conflict with *State v. Hurt*, 3d Dist. Hancock No. 5-87-24, 1989 WL 22049 (Mar. 16, 1989), which held that prior accusations of rape involved sexual activity and therefore were barred by the rape-shield law. We reversed the Fourth District's decision, explaining that the rape-shield law is inapplicable only when the prior accusation of sexual assault involves a fabrication of sexual activity. *Boggs,* 63 Ohio St.3d at 423, 588 N.E.2d 813. But if the accusation is true, the matter involves sexual activity and the rape-shield law does apply. *Id.* We therefore remanded Boggs's case to the trial court to hold an in camera hearing to determine the truth or falsity of the prior rape accusation at issue.

{¶ 21} Jeffries contends that we changed course from *Boggs* and chose not to apply the rape-shield law to nonconsensual sexual activity in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, which involved the admissibility of evidence of prior acts of sexual abuse committed by the defendant. But the reason we did not evaluate the admissibility of the evidence under the standards of the rape-shield law in *Williams* was that the parties did not raise the issue. Instead we addressed the interplay between Evid.R. 404(B) and R.C. 2945.59. No meaning should be imputed from the fact that we did not sua sponte raise and address an issue not briefed by the parties. Further, *Williams* did not overrule *Boggs*, nor did it overrule *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), which recognized that the rape-shield law should be applied in determining whether a defendant's other acts of sexual abuse are admissible. *Id.* at 59-60.

{¶ 22} Notwithstanding the unambiguous meaning of the term "sexual activity" as defined in R.C. 2907.01, Jeffries contends that the clear purpose of the rape-shield law is limited to preventing "impermissible attacks on some Victorian-minded theory of promiscuity." He asserts that applying the rape-shield law to an

accuser's nonconsensual sexual activity does nothing to promote the purpose behind the law. We disagree.

{¶ 23} We have previously noted that the rape-shield law promotes several interests: (1) preventing harassment of the victim with probing inquiries into private matters, (2) discouraging "the tendency in rape cases to try the victim rather than the defendant," (3) encouraging victims to report sexual assaults without fear of being harassed and traumatized by the process, and (4) "excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative." *State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979). All of these interests serve the fundamental goal of facilitating the truth-finding function of a trial. The truth-finding function is undermined if victims are discouraged from coming forward or if irrelevant, inflammatory evidence distracts the finders of fact.

{¶ 24} The ability to use evidence of prior sexual activity to harass and traumatize the victim and mislead a jury does not stop at the line between consensual and nonconsensual sexual activity. Unnecessary and invasive questioning into past sexual experiences could be just as embarrassing and traumatic when one is asked about prior sexual assaults as it is when one is asked about his or her past consensual sexual activity. *See State v. Budis*, 125 N.J. 519, 528, 593 A.2d 784 (1991); *State v. Besk*, 138 N.H. 412, 414, 640 A.2d 775 (1994). Moreover, an accuser's prior sexual activity of any kind, even nonconsensual activity, is irrelevant in most cases. *See State v. DeSantis*, 155 Wis.2d 774, 792-793, 456 N.W.2d 600 (1990).

{¶ 25} To say that the purpose of the rape-shield law is not furthered by excluding evidence of an accuser's past sexual abuse is to vastly underestimate the insidiousness of victim blaming. We reject Jeffries's narrow interpretation. Our holding that nonconsensual sexual activity is included in the meaning of "sexual activity" in the rape-shield law furthers the fundamental purpose of the law.

However, it is worth reemphasizing that the rape-shield law *does not* apply to prior accusations of sexual assault that involve a fabrication of sexual activity.

{¶ 26} Jeffries further argues that the rule of lenity, the rule that courts should construe statutes so as to preserve their constitutionality, and the absurd-result doctrine all require the law to be narrowly construed to exclude nonconsensual sexual activity. We reject each of these arguments in turn.

{¶ 27} To begin with, the rule of lenity applies to rules "defining offenses or penalties." R.C. 2901.04(A). Because the rape-shield law governs the admissibility of evidence and does not define a crime or penalty, the rule of lenity is not applicable. Next, the preservation-of-constitutionality rule is applicable when ambiguous statutory language is subject to two plausible interpretations, one of which renders the statute unconstitutional. *See Salinas v. United States*, 522 U.S. 52, 59, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). But when the statutory language is unambiguous, the possibility of its unconstitutionality does not give the judiciary license to alter its language. *See id*. at 59-60. Because the term "sexual activity" is clear and unambiguous, the rule is inapplicable.

{¶ 28} We note that within Jeffries's preservation-of-constitutionality argument, he asserts that the rape-shield law is unconstitutional as applied to defendants whose constitutional rights to due process and to confront witnesses are impaired by the inability to provide relevant, probative evidence about an accuser's nonconsensual-sexual-activity history. This argument was contained in Jeffries's second proposition of law, and we did not accept jurisdiction over that proposition of law. Our decision today is limited to a determination of the meaning of the terms of the rape-shield law. We leave for another day the issue whether prohibiting the admission of evidence of an accuser's history of nonconsensual sexual activity under the rape-shield law might be unconstitutional as applied in certain cases.

{¶ 29} Finally, Jeffries's absurd-result argument is unavailing. As we have explained, there is nothing absurd about the General Assembly's desire for the rape-

shield law to exclude evidence of prior instances of both nonconsensual and consensual sexual activity. We therefore do not have reason to construe the term "sexual activity" in a manner contrary to its plain meaning.

## CONCLUSION

{¶ 30} We hold that the plain meaning of the term "sexual activity" as used in the rape-shield law includes both consensual and nonconsensual sexual activity and that both are barred from admission into evidence by the rape-shield law, absent one of the specific exceptions listed in the law. We therefore affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, for appellee.

Mark A. Stanton, Cuyahoga County Public Defender, John T. Martin, Assistant Public Defender, for appellant.

_____