[Cite as *Cortland Savs. & Banking Co. v. Platinum Rapid Funding Group, Ltd.*, 2021-Ohio-4615.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

THE CORTLAND SAVINGS
AND BANKING COMPANY,

      Plaintiff-Appellee,

  - v -

PLATINUM RAPID FUNDING
GROUP, LTD., et al.,

      Defendant-Appellant.

CASE NO. 2021-T-0006

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 CV 00633

---

## O P I N I O N

Decided: December 30, 2021
Judgment: Reversed; remanded

---

*Matthew G. Vansuch and Timothy M. Reardon*, Brouse McDowell LPA, 6550 Seville Drive, Suite B, Canfield, OH 44406 (For Plaintiff-Appellee).

*Jerry M. Bryan* and *J. Michael Thompson*, Henderson, Covington, Messenger, Newman & Thomas Co., LPA, 6 Federal Plaza Central, Suite 1300, Youngstown, OH 44503 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Platinum Rapid Funding Group, Ltd. ("Platinum") appeals the decision denying its motion for summary judgment and granting partial summary judgment to The Cortland Savings and Banking Company ("Cortland Bank"). We reverse and remand.

{¶2} Cortland Bank is a community bank in Northeastern Ohio. On March 19, 2018, Cortland Bank, 21st Century Concrete Construction, Inc. ("21st Century"), and Patrick J. Butler as president of 21st Century, entered into a written business loan

agreement, whereby Cortland Bank loaned 21st Century $1,000,000 pursuant to a promissory note and a commercial security agreement. The commercial security agreement granted Cortland Bank a security interest in numerous assets owned by 21st Century, including its accounts. Pursuant to the business loan agreement, 21st Century maintained a deposit account with Cortland Bank ("the checking account"). Cortland Bank filed a UCC-1 Financing Statement with the Ohio Secretary of State identifying the collateral involved in the transaction.

{¶3} Platinum is a "New York corporation engaged in the business of providing businesses with working capital funding for operating expenses by virtue of purchasing future business receivables and sales proceeds from merchants at a discount." In April, June, and October 2018, Platinum and 21st Century entered into three merchant agreements, whereby Platinum agreed to make two advances of $250,000 and one advance of $846,000 to 21st Century in exchange for a percentage of 21st Century's future receivables in the total amount of $1,526,000. 21st Century authorized Platinum to withdraw weekly payments from its checking account maintained at Cortland Bank until the amount owed to Platinum was paid in full. Between March 2018 and March 2019, $869,250 was transferred from the checking account to Platinum.

{¶4} 21st Century defaulted on its loan with Cortland Bank. On April 29, 2019, Cortland Bank received a judgment against 21st Century and Butler in the approximate amount of $1,000,000.

{¶5} Thereafter, Cortland Bank filed a complaint against 21st Century, Butler, and Platinum. Subsequently, Cortland Bank amended its complaint, removing 21st Century as a named defendant. With respect to Platinum, Cortland Bank sought return

2

of all funds transferred to Platinum from the checking account prior to 21st Century defaulting on the Cortland Bank loan.  Cortland Bank alleged claims of conversion, unjust enrichment, impairment of a security interest, and tortious interference with contract. Cortland Bank and Platinum filed competing summary judgment motions.  The trial court denied Platinum's motion and granted Cortland Bank's motion on its claims for conversion, impairment of security interest, and tortious interference with contract and certified that there was no just cause for delay pursuant to Civ.R. 54.

{¶6}   In its first assigned error, Platinum argues:

{¶7}   "[1.] The trial court erred in granting Cortland's Motion for Summary Judgment, and denying Platinum's Motion for Summary Judgment, based upon its finding that Platinum did not receive the Transfers from the Deposit Account of 21st Century at Cortland free and clear of any Cortland security interest (T.d. 75)."

{¶8}   "We review decisions awarding summary judgment de novo, i.e., independently and without deference to the trial court's decision."  *Hedrick v. Szep*, 11th Dist. Geauga No. 2020-G-0272, 2021-Ohio-1851, ¶ 13, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

> Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Allen v. 5125 Peno, LLC*, 2017-Ohio-8941, 101 N.E.3d 484, ¶ 6 (11th Dist.), citing *Holliman v.*

3

Case No. 2021-T-0006

*Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). "The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Allen* at ¶ 6, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial." *Allen* at ¶ 6, citing *Dresher* at 293.

{¶9} Here, the trial court's decision turns largely upon statutory construction. "The meaning of statutory language is a question of law, which we review de novo." *State v. Jeffries*, 160 Ohio St.3d 300, 2020-Ohio-1539, 156 N.E.3d 859, ¶ 15, *cert. denied*, 141 S.Ct. 1085, 208 L.Ed.2d 539, citing *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, ¶ 6. "A fundamental preliminary step in our analysis of any legislation is to review the plain language of the statute." *Jeffries* at ¶ 15, citing *Vanzandt* at ¶ 7. "'When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation.'" *Jeffries* at ¶ 15, quoting *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). "When there is no ambiguity on the face of the statute, it must simply be applied as written." *Jeffries* at ¶ 15, citing *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994).

{¶10} "We must read statutory words and phrases in context and construe them in accordance with the rules of grammar and common usage." *Jeffries* at ¶ 16, citing *State ex rel. Barley v. Ohio Dept. of Job & Family Servs.*, 132 Ohio St.3d 505, 2012-Ohio-3329, 974 N.E.2d 1183, ¶ 20. "But words and phrases that have a technical or particular meaning by legislative definition must be construed accordingly." *Jeffries* at ¶ 16, citing

4

*State ex rel. Barley* at ¶ 21. "'Where a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute.'" *Jeffries* at ¶ 16, quoting *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 267 N.E.2d 781 (1971), paragraph two of the syllabus.

{¶11} This matter involves Article 9 of the Uniform Commercial Code ("UCC") as adopted in Ohio Revised Code Chapter 1309, as it applies to "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract[.]" R.C. 1309.109(A)(1). Pursuant to R.C. 1309.201(A), "[e]xcept as otherwise provided * * *, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."

{¶12} There does not appear to be any dispute that Cortland Bank held a security interest in 21st Century's accounts receivable and deposit account effective against Platinum pursuant to R.C. 1309.201(A). In addition, Cortland Bank's interest in the accounts receivable attached to proceeds from the accounts receivable pursuant to R.C. 1309.315(A), which provides:

> Except as otherwise provided in this chapter and in division (B) of section 1302.44 of the Revised Code:
>
> (1) A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and
>
> (2) A security interest attaches to any identifiable proceeds of collateral.

{¶13} However, the parties dispute the meaning of R.C. 1309.332, which provides:

5

(A) A transferee of money takes the money free of a security interest unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

(B) A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

Neither party argues that subsection (A) applies. However, based upon R.C. 1309.332(B), Platinum maintains that the funds it received from 21st Century's account at Cortland Bank were transferred free of Cortland Bank's interest.

{¶14} The trial court disagreed, concluding that because the "funds from a deposit account" are different than the "deposit account" itself, R.C. 1309.332(B) strips a secured party's interest in "the deposit account," leaving intact its interest in the "funds." In reaching this conclusion, the trial court relied on the Fifth Circuit's decision in *In re Tusa-Expo Holdings, Inc. v. Knoll, Inc.,* 811 F.3d 786, 798 (5th Cir.2016). There, the court found that the plain language of Texas' adoption of this UCC provision (identical to that adopted in Ohio) does not "even address, must less strip, a security interest that encumbers *the funds contained in the deposit account*." (Emphasis added.) *Id.* at 796.

{¶15} However, the Fifth Circuit did not consider the definition of an "account" under Article 9. Despite ordinary parlance, a "deposit account" under Article 9 *is not* a device containing funds. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/deposit%20account (defining a deposit account as "a bank account in which people keep money that they want to save: savings account.") (accessed August 5, 2021). Instead, Article 9 defines a "deposit account" as "a demand, time, savings, passbook, or similar *account* maintained with a bank but does not include

6

investment property or accounts evidenced by an instrument." (Emphasis added.) R.C. 1309.102(A)(29). The UCC defines an "account" as, with certain exclusions,

> *a right to payment of a monetary obligation*, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state.

(Emphasis added.) R.C. 1309.102(A)(2)(a).

{¶16} Accordingly, for purposes of Article 9, a deposit account is by statutory definition a right to payment from a bank of the money that was deposited by the customer. Pursuant to this definition, the deposit of funds in an account is the equivalent of exchanging the funds for a promise to pay. Therefore, we disagree with *In re Tusa-Expo* insofar as the court based its decision on the premise that a deposit account *contains* funds. Instead, the funds are transformed to a right to payment, i.e. the deposit account, to which the security interest attaches. However, the security interest does not attach from the deposit account to the funds ordered paid, absent collusion, pursuant to R.C. 1309.322(B).

{¶17} Although we reach this conclusion based upon the statutory definition of "account," this reading of the statute is also consistent with the policy underlying R.C. 1309.332, as set forth in Official Comment 3, which provides:

> Broad protection for transferees helps to ensure that security interests in deposit accounts do not impair the free flow of

7

funds. It also minimizes the likelihood that a secured party will enjoy a claim to whatever the transferee purchases with the funds. Rules concerning recovery of payments traditionally have placed a high value on finality. The opportunity to upset a completed transaction, or even to place a completed transaction in jeopardy by bringing suit against the transferee of funds, should be severely limited. * * *

{¶18} Applying the above Article 9 provisions and definitions to this case, Cortland Bank's interest in 21st Century's accounts receivable attached to the proceeds of the accounts receivable upon payment. *See* R.C. 1309.315(A). When the proceeds were deposited to the checking account, Cortland Bank's interest attached to the deposit account, i.e. the right to payment. *See id.* Cortland Bank also had an original interest in the deposit account, i.e. the right to payment, superior to Platinum's, due to Cortland Bank's position as a secured creditor that is also the depository bank. *See* R.C. 1309.203(B)(3)(d) (security interest in a deposit account enforceable pursuant to security agreement where creditor has control of the account); R.C. 1309.104(A)(1) ("A secured party has control of a deposit account if * * * [it] is the bank with which the deposit account is maintained[.]"); and R.C. 1309.327(C) ("[e]xcept as otherwise provided * * *, a security interest held by the bank with which the deposit account is maintained has priority over a conflicting security interest held by another secured party"). However, when the funds were transferred to Platinum, R.C. 1309.332(B) operated to transfer the funds free of the interest in the right to payment, i.e. the deposit account, if there was no collusion.

{¶19} Therefore, Platinum's first assigned error has merit insofar as we agree that R.C. 1309.332(B) permits Platinum, as the transferee, to take the funds free of Cortland Bank's security interest in the deposit account absent collusion, and that the trial court erred in its determination that a security interest in the funds remained intact. This is the

8

outcome precisely contemplated by Comment 2 to R.C. 1309.332, as illustrated by Example 1 to that Comment:

> **Example 1**: Debtor maintains a deposit account with Bank A. The deposit account is subject to a perfected security interest in favor of Lender. Debtor draws a check on the account, payable to Payee. Inasmuch as the check is not the proceeds of the deposit account (it is an order to pay funds from the deposit account), Lender's security interest in the deposit account does not give rise to a security interest in the check. Payee deposits the check into its own deposit account, and Bank A pays it. Unless Payee acted in collusion with Debtor in violating Lender's rights, Payee takes the funds (the credits running in favor of Payee) free of Lender's security interest. This is true regardless of whether Payee is a holder in due course of the check and even if Payee gave no value for the check.

{¶20} Although the parties raised arguments regarding collusion in their summary judgment filings, the trial court did not reach that issue, as it was unnecessary due to its construction of the statute. However, the issue of collusion is now determinative, and this matter is remanded to the trial court to address that issue in the first instance. *See Alcus v. Bainbridge Twp.*, 11th Dist. Geauga No. 2019-G-0206, 2020-Ohio-626, ¶ 30 ("Where the trial court does not rule on a summary judgment argument because it finds it moot, it is not proper for the appellate court in the first instance to address the argument." (Citations omitted.)).

{¶21} In its remaining assigned errors, Platinum argues:

{¶22} "[2.] The trial court erred in granting Cortland's Motion for Summary Judgment, and denying Platinum's Motion for Summary Judgment, based upon its finding that Cortland's common law claims were not preempted by the Uniform Commercial Code (T.d. 75, pp. 9-10)."

9

Case No. 2021-T-0006

{¶23} "[3.] The trial court erred in granting Cortland's Motion for Summary Judgment and denying Platinum's Motion for Summary Judgment on Cortland's conversion claim, based upon its finding that the Transfers received by Platinum were specifically identifiable funds and/or proceeds subject to a conversion claim (T.d. 75, p. 10)."

{¶24} "[4.] The trial court erred in granting Cortland's Motion for Summary Judgment, and denying Platinum's Motion for Summary Judgment, on Cortland's claim for impairment of a security interest (T.d. 75, p. 11)."

{¶25} "[5.] The trial court erred in granting Cortland's Motion for Summary Judgment, and denying Platinum's Motion for Summary Judgment, on Cortland's claim for tortious interference with contract (T.d. 75, pp. 11-12)."

{¶26} Based on our disposition of Platinum's first assigned error, the trial court's judgment is reversed, and the matter is remanded for the trial court to apply R.C. 1309.332(B) as set forth above. Because the trial court's judgment regarding the claims for conversion, impairment of a security interest, and tortious interference with contract depend upon application of R.C. 1309.332(B), our review of the second through fifth assigned errors would be premature, and we decline to address them.

{¶27} The judgment is reversed, and this matter is remanded for further proceedings consistent with this opinion.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.