[Cite as *In re B.T.*, 2024-Ohio-432.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: B.T.
    C.T.

C.A. Nos.    30682
                30683

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 22 08 0716
                DN 22 08 0717

DECISION AND JOURNAL ENTRY

Dated: February 7, 2024

STEVENSON, Judge.

{¶1} Appellant, B.M. ("Mother"), appeals from consolidated judgments of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her minor children dependent and placed one of them in the temporary custody of Summit County Children Services Board ("CSB") and the other in the legal custody of his father. This Court affirms.

I.

{¶2} Mother is the biological mother of B.T., born July 19, 2015; and C.T., born August 5, 2022. The children's fathers did not appeal from the trial court's judgment. Although the procedural facts of this case are complicated, this Court will confine its review to the basic facts relevant to this appeal.

{¶3} Approximately four months before C.T. was born, B.T.'s father ("Father T.") filed proceedings against Mother in the domestic relations division, seeking to establish his parental

rights as he and Mother were not married. Father T. sought custody of B.T. because he alleged that Mother was abusing drugs. The domestic relations court designated Father T. as B.T.'s emergency temporary custodian. That case was transferred to the juvenile division shortly after CSB filed its complaints in this case.

{¶4} On August 15, 2022, CSB filed complaints to allege that both children were abused, neglected, and dependent because Mother had used drugs while pregnant and C.T. had been treated for symptoms of drug withdrawal after his birth. C.T. was first treated at Cleveland Clinic/Akron General Medical Center ("Akron General"), where he was born. Akron General's medical personnel believed that C.T. was exhibiting symptoms of drug withdrawal, but Mother left the hospital after refusing to submit to a drug screen. C.T. was treated in the neonatal intensive care unit ("NICU") of Akron Children's Hospital ("Akron Children's"), where he was diagnosed with neonatal abstinence syndrome ("NAS") and received treatment for drug withdrawal for ten days. After CSB filed its complaints, the trial court placed C.T. in the emergency temporary custody of CSB and B.T. in the emergency temporary custody of Father T.

{¶5} The children's cases were originally set for a consolidated adjudicatory hearing to be held on October 18, 2022, and a dispositional hearing, if necessary, to be held on November 9. When the parties met for the scheduled hearing on October 18, however, Mother's trial counsel informed the court that Mother was not satisfied with his representation and wanted the court to appoint her new counsel. The trial court permitted her trial counsel to withdraw, appointed Mother new trial counsel two days later, and set the adjudicatory hearing for November 9.

{¶6} On November 9, Mother appeared for the adjudicatory hearing with her new trial counsel, who stated that he was prepared to proceed, and the hearing was held before a magistrate that day. CSB presented the testimony of two intake caseworkers, a nurse who had treated C.T. at

Akron General, and a neonatal nurse practitioner who had treated him in Akron Children's NICU; as well as C.T.'s medical records from both hospitals. The magistrate later adjudicated the children dependent under R.C. 2151.04(B) and (C). The trial court adopted that decision, pending the filing of timely objections.

{¶7} At the conclusion of the adjudicatory hearing, the trial court set a new date for the dispositional hearing. Prior to that date, however, Mother's trial counsel moved to continue the dispositional hearing because he needed more time to prepare. The trial court ultimately extended the dispositional hearing until December 21, 2022. At the commencement of the hearing, Mother expressed her agreement with B.T. being placed in the legal custody of Father T., but contested the disposition of C.T., including the timeliness of the hearing. After the hearing, the magistrate decided that B.T. should be placed in the legal custody of Father T. and that C.T. should be placed in the temporary custody of CSB. The trial court adopted those decisions the same day.

{¶8} The trial court also denied Mother's motions to dismiss this case for the court's alleged failure to comply with the 90-day time limit for the dispositional hearing set forth in R.C. 2151.35(B)(1). It reasoned that, although R.C. 2151.35(B)(1) required that the dispositional hearing be held within 90 days after the complaint was filed, it also permitted the trial court to extend that period by up to 45 days. Because that extended period did not end until December 28, 2022, and the hearing was held before that date, the trial court concluded it had complied with R.C. 2151.35(B)(1).

{¶9} Mother filed timely objections to the adjudicatory decisions pertaining to both children and the dispositional decision pertaining to C.T. only, which were later overruled by the trial court. The trial court adjudicated both children dependent and placed B.T. in the legal custody

of Father T. and C.T. in the temporary custody of CSB. Mother appeals from those judgments and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE MINOR CHILDREN ARE DEPENDENT CHILDREN PURSUANT TO R.C. 2151.04(B) AND (C).

{¶10} Mother's first assignment of error challenges the trial court's adjudication of her children as dependent under R.C. 2151.04(B) and (C). Those provisions alternatively define a dependent child as one:

(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian; [OR]

(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]

{¶11} Mother argues that CSB failed to prove that her children were dependent under either of these provisions because it did not present any admissible evidence that she used drugs while pregnant and/or that her drug use had any negative impact on her children. CSB had attempted to prove, and the trial court found, that the children were dependent primarily because, due to Mother's drug use while pregnant with C.T., the child was diagnosed with NAS after birth and required medical treatment for symptoms of drug withdrawal for the next ten days. Mother does not dispute that those facts, if proven, would be sufficient to support an adjudication that both children were dependent under R.C. 2151.04(B) and (C).

{¶12} Instead, Mother asserts that CSB did not prove that C.T. had been diagnosed with NAS because the only evidence it offered was the testimony of a neonatal nurse practitioner, who testified about that diagnosis over Mother's objection that the witness was not qualified to diagnose the child. Even if Mother is correct that the nurse practitioner was not qualified to testify about

the child's diagnosis, CSB presented substantial other evidence about C.T.'s NAS diagnosis and treatment.

{¶13} At the adjudicatory hearing, CSB had planned to offer the testimony of the doctor who diagnosed C.T. with NAS in the NICU, but the doctor did not appear for the hearing. Nevertheless, CSB presented the child's medical records from Akron General and Akron Children's NICU, as well as the testimony of a nurse and a pediatric nurse practitioner who cared for the child while he was hospitalized for 10 days. Mother's trial counsel objected when the nurse practitioner testified about the child's diagnosis of NAS, but the hospital records and other testimony of the nurse and nurse practitioner were admitted without any objection.

{¶14} Through the testimony of these witnesses and the child's medical records from both Akron General and Akron's Children's NICU, the trial court admitted the following evidence. During the child's first 24 hours at Akron General, he was irritable, tight, and jittery; was not properly sucking or swallowing; and was spitting up green mucus. When asked by hospital staff, Mother denied that she had used drugs during pregnancy, but she refused to take a drug screen and left the hospital.

{¶15} Akron General transferred C.T. to the Akron Children's NICU for diagnosis and treatment. He was first tested in the NICU at Children's Hospital main campus to rule out other potential gastrointestinal causes for his symptoms and was later transferred back to the Children's Hospital NICU located inside Akron General Hospital. C.T. was evaluated throughout his hospital stay using the Eat, Sleep, Console scoring system (ESC). Using this scoring system, hospital staff monitored C.T.'s ability to consume food, sleep, and be consoled until it was deemed medically necessary to use medication or other medical intervention.

{¶16} C.T.'s records from Akron Children's NICU indicate that a physician diagnosed C.T. with NAS and C.T. received treatment in the NICU for ten days to ease his symptoms of drug withdrawal. The records and the testimony of the pediatric nurse practitioner who treated the child explain that, by the day after his birth, C.T. was exhibiting symptoms of drug withdrawal including rapid breathing, increased irritability, disorganized feedings, muscle stiffness, and loose stools. The child's ESC scores indicated that his condition was worsening because he was unable to sleep between feedings, required more than 30 minutes to console, and he was not consuming enough formula by mouth.

{¶17} The NICU medical staff determined that it was necessary to begin treating C.T. with morphine because he was inconsolable and would not sleep. C.T. received a dose of morphine every three hours for approximately three days. The morphine improved his symptoms of sleeplessness and irritability and his ESC scores improved. Even after three doses of morphine, however, C.T. consumed only 10-30 percent of the formula feedings that had been ordered by the doctor. Consequently, hospital staff inserted a nasogastric tube for C.T.'s feedings because he was not getting enough nutrition by mouth.

{¶18} C.T. was discharged from the NICU ten days after his birth, into the emergency temporary custody of CSB. His records include a principal diagnosis by a physician of "[n]eonatal withdrawal symptoms from maternal use of drugs of addiction" as well as secondary diagnoses that included "[n]ewborn affected by maternal use of unspecified medication[.]" The NICU discharge instructions emphasized C.T.'s NAS diagnosis and instructed his caregivers to use a specific type of formula and follow a strict feeding schedule, and to continue monitoring his breathing, formula consumption, and urine and stool output. An appointment with a pediatrician was scheduled for C.T. for the day after his discharge.

{¶19} This evidence, all of which was admitted without any objection from Mother, established that C.T. had been diagnosed with NAS caused by Mother's drug use while pregnant. Consequently, the trial court had clear and convincing evidence before it to demonstrate that C.T. and B.T. were dependent children. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THE MAGISTRATE DID NOT ERR IN HOLDING THE DISPOSITIONAL HEARING ON DECEMBER 21, 2022, MORE THAN THIRTY (30) DAYS FROM THE ADJUDICATORY HEARING ON NOVEMBER 9, 2022.

{¶20} Mother's second assignment of error is that the trial court erred by failing to dismiss the complaint pertaining to C.T. because it did not hold the child's dispositional hearing within 30 days after the adjudicatory hearing. She bases her argument on R.C. 2151.35(B)(1), which provides, in relevant part:

The dispositional hearing *may* not be held more than *thirty days* after the adjudicatory hearing is held. The dispositional hearing *shall* not be held more than *ninety days* after the date on which the complaint in the case was filed except that [it may extend the 90-day period for good cause, for up to 45 days].

If the dispositional hearing is not held *within the period of time* required by this division, the court, on its own motion or the motion of any party * * * *shall dismiss* the complaint without prejudice.

(Emphasis added.). As italicized above, R.C. 2151.35(B)(1) provides that the dispositional hearing "may" not be held more than 30 days after the adjudicatory hearing ("the 30-day provision"), and that the dispositional hearing "shall" not be held more than 90 days after the filing of the complaint ("the 90-day provision"). The last paragraph of R.C. 2151.35(B)(1) ("the dismissal provision") requires the trial court to dismiss the complaint if "the dispositional hearing is not held within *the period of time* required by this division[.]"

{¶21} In the trial court, Mother challenged the trial court's compliance with each of these provisions. On appeal, she asserts only that the trial court was required to dismiss the complaint in C.T.'s case because it did not hold the dispositional hearing within the 30-day provision. The record reveals that the hearing was held on December 21, 2022, which was 42 days after the November 9 adjudicatory hearing. Thus, the question raised in this appeal is whether the dismissal provision, quoted above, applies to the 30-day provision of R.C. 2151.35(B)(1). This Court reviews the interpretation of statutory language as a matter of law. *State v. Jeffries*, 160 Ohio St.3d 300, 2020-Ohio-1539, ¶ 15.

{¶22} There is significant legal authority that the dismissal provision applies to a trial court's failure to comply with the 90-day provision of R.C. 2151.35(B)(1). Mother has failed to cite any authority, and this Court is not aware of any, that has applied the dismissal provision to a court's failure to comply with the 30-day provision. Moreover, as explained below, this Court concludes as a matter of law that the dismissal provision does not apply to the 30-day provision.

{¶23} In *In re K.M.*, 159 Ohio St.3d 544, 2020-Ohio-995, ¶ 31, the Ohio Supreme Court held that former R.C. 2151.35(B)(1) (before the legislature added language to authorize a 45-day extension) imposed "a mandatory deadline requiring a juvenile court to dismiss a case without prejudice if the court fails to conduct a dispositional hearing within 90 days of the filing of a complaint alleging that a child is abused, neglected or dependent." The Court explicitly focused its reasoning on the mandatory word "shall" in the 90-day provision (the hearing *shall* not be held) and the language in the dismissal provision that the trial court "shall" dismiss the complaint if the hearing is not held within that 90-day "period of time." *See id*. at ¶ 17-19, 23. The Court emphasized that it was a violation of the mandatory 90-day provision that required a dismissal of the complaint for the trial court's failure to hold the dispositional hearing "within the period of

time" required by R.C. 2151.35(B)(1).  *See id.* at ¶ 17, 23, 31.  *See also In re K.K.*, 170 Ohio St.3d 149, 2022-Ohio-3888, ¶ 8 (contrasting the directory "may" language of the 30-day provision with the mandatory "shall" language of the 90-day provision.).

{¶24}  The Supreme Court also focused on the fact that, at that time, R.C. 2151.35(B)(1) included no provision authorizing the trial court to extend the mandatory 90-day deadline.  The Court emphasized that, "[i]f the General Assembly had intended for a juvenile court to proceed with dispositional determinations beyond the 90-day time limit in R.C. 2151.35(B)(1), it could have added language to that effect."  *In re K.M.,* 2020-Ohio-995, at ¶ 24.

{¶25}  At the time *In re K.M.* was decided, former R.C. 2151.35(B)(1) did not include its current language to permit an extension of the 90-day period, but it did permit an extension of the 30-day provision, up to the mandatory time limit of 90 days after the filing of the complaint.  R.C. 2151.25(B)(1) then provided, in relevant part:

> The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held.  *The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel.*  The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.

> If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party * * *, shall dismiss the complaint without prejudice.

(Emphasis added.)

{¶26}  In apparent response to the Supreme Court's decision in *In re K.M.*, the General Assembly amended R.C. 2151.35(B)(1), effective April 12, 2021, to its current version.  The amendment deleted the italicized language quoted above, which authorized reasonable extensions of the 30-day period up to the maximum 90-day period, apparently because it deemed that language

to be unnecessary, given that it added language to authorize an extension of the mandatory 90-day provision.

{¶27} The 2021 amendment focused its revisions on authorizing the trial court to extend the mandatory 90-day provision, to avoid dismissal of the complaint. R.C. 2151.35(B)(1) now provides:

> * * * The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed *except that, for good cause shown, the court, on its own motion or on the motion of any party or the child's guardian ad litem, may continue the dispositional hearing for a reasonable period of time beyond the ninety-day deadline. This extension beyond the ninety-day deadline shall not exceed forty-five days and shall not be available for any case in which the complaint was dismissed and subsequently refiled.*
>
> If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.

(Emphasis added.)

{¶28} The apparent intention of the 2021 amendment, both in its language additions and deletions, was to authorize trial courts to extend the statute's overall, mandatory 90-day provision. The General Assembly apparently understood that the "period of time" required by R.C. 2151.35(B)(1) is set forth in the mandatory 90-day provision, not the 30-day provision, and the trial court is now authorized to extend that 90-day period, for good cause, by up to 45 days.

{¶29} The statute's plain language also supports such an interpretation. The 30-day provision cannot be construed to be mandatory or to require dismissal of the complaint if the trial court fails to hold the dispositional hearing within 30 days of the adjudicatory hearing because: (1) the 30-day provision does not include the term "shall," and (2) the 30-day provision is not connected to the dismissal provision. This Court will address each of these "plain language" reasons below.

{¶30} As noted already, the 30-day provision provides that the trial court "may" not hold the hearing more than 30 days after the adjudicatory hearing, indicating that the 30-day provision is merely directory and not mandatory. *See In re K.M.*, 2020-Ohio-995, at ¶ 2 (implicitly construing the 30-day provision as such); *In re K.K.*, 2022-Ohio-3888, at ¶ 8 (contrasting the statute's use of the differing terms "may" and "shall" in the 30- and 90-day provisions). As emphasized in *In re K.M.*, the 90-day provision is mandatory explicitly because it includes the word "shall," and is directly connected to the dismissal provision for failure to comply with that 90-day provision. 2020-Ohio-995, at ¶ 18-23.

{¶31} The language of R.C. 2151.35(B)(1) fails to connect a trial court's failure to comply with the 30-day provision with the language requiring dismissal of the complaint. The dismissal provision provides that the trial court "shall dismiss the complaint" for failing to hold the hearing within "the period of time" (singular) required by this division, not the two "periods" of time (30-day and 90-day) referenced in the statute. A plain reading of this language demonstrates that the "period of time" required by the statute is the statute's overall time limit, the 90-day period after the filing of the complaint, as potentially extended by another 45 days.

{¶32} Therefore, this Court must conclude that R.C. 2151.35(B)(1) would have required dismissal of C.T.'s complaint if the trial court had failed to comply with the mandatory 90-day provision, as extended, but not merely because it did not comply with the directory language to hold the dispositional hearing within 30 days of the adjudicatory hearing. This interpretation of R.C. 2151.25(B)(1) is supported by its legislative history, its plain language, as well as Ohio Supreme Court case law interpreting a prior version of this statute.

{¶33} Consequently, the trial court did not err in failing to dismiss the complaint in C.T.'s case. Mother's second assignment of error is overruled.

III.

{¶34}  Mother's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

STEPHEN M. GRACHANIN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and MARRETT W. HANNA and STEVEN M. HOOTEN, Assistant Prosecuting Attorneys, for Appellee.